**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| **v.** | * | |
| **GREGORY SAULSBURY** | * | **Criminal No.: JKB-09-288** |
| **Petitioner** | * | |
| | ...oOo... | |

**GOVERNMENT RESPONSE IN OPPOSITION TO MOTION FOR IMPOSITION OF A REDUCED SENTENCE PURSUANT TO SECTION 404 OF THE FIRST STEP ACT**

In June 2016, after protracted habeas litigation that began in 2013, and after participating in a resentencing hearing before this Court, the Petitioner, Gregory Saulsbury, was granted certain concessions by the government on his sentence.  In exchange, the defendant entered into a settlement agreement.  In that agreement, the government believed it was getting global peace and that the defendant would make no further attempts to attack his now-reduced sentence under any circumstances.  The defendant is now trying to renege on that deal.  He is seeking to attack his sentence yet again, even after promising this Court and the government he would not do so. Because the government is entitled to the benefit of its bargain, the instant motion must be dismissed pursuant to the clear terms of the parties' agreement.

In addition to being barred by the settlement agreement, the Petitioner's request for Section 404 sentence should be denied because the large quantity of narcotics Petitioner trafficked shows that no sentencing disparity needs correction here.

**BACKGROUND**

Gregory Saulsbury ("Petitioner") trafficked in large quantities of cocaine, cocaine base and marijuana within and around Baltimore City – often serving as a supplier to the Pasadena Denver Lanes, or PDL, a set of the vicious Bloods street gang.

On May 26, 2009, Petitioner was charged along with 33 co-defendants in a two-count Indictment with one count of conspiracy to distribute 50 grams or more of cocaine base, powder cocaine and marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(iii) (Count Two).  ECF No. 1, Indictment.  Count One of the Indictment, in which the defendant was not charged, alleged that 34 persons (including many of the Petitioner's co-defendants in Count Two) were members of a conspiracy to engage in the affairs of an enterprise through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d).

Prior to trial, on February 17, 2010, the government filed a Notice of its Intention to Seek Enhanced Penalties under 21 U.S.C. § 851.  ECF No. 596.  As a result, Petitioner's statutory penalty range as to Count Two was a mandatory life sentence under 21 U.S.C. §§ 841(b)(1)(A) and 851.

On March 19, 2010, Petitioner was found guilty by jury verdict of the sole count against him.  At sentencing, the Court found that Petitioner was a career offender under U.S.S.G. § 4B1.1, which resulted in a base offense level of 37.[1]  Presentence Report ("PSR") at ¶ 22.  Petitioner's final offense level was also 37.  PSR at ¶ 24.  When combined with a criminal history category of VI, Petitioner's guidelines sentencing range was 360 months to life.  PSR at ¶ 54.

On July 15, 2010, the Honorable William D. Quarles, Jr., sentenced Petitioner to the mandatory term of life imprisonment.  ECF No. 770, Judgment and Commitment Order ("J&C").  Petitioner's conviction was affirmed on direct appeal by the U.S. Court of Appeals for the Fourth Circuit.  *United States v. Richardson*, 461 F. App'x 308, 311 (4th Cir. 2012).

---

[1]     The enhancement was based on at least two previous convictions for CDS Possession with Intent to Manufacture/Distribute on at least two occasions.  PSR at ¶ 22.

On February 26, 2013, Petitioner filed a Motion to Vacate pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel at trial. ECF No. 1208. The Government filed a Response in Opposition on June 3, 2013. ECF No. 1250. On March 23, 2015, Judge Quarles issued an Order finding that an evidentiary hearing was necessary on Petitioner's first claim of ineffective assistance of counsel. ECF No. 1405. Ultimately, after negotiations among the parties, the Government and Petitioner filed a Joint Motion to Reduce Sentence and Agreed Joint Disposition recommending that the Court reduce Petitioner's sentence to 264 months' imprisonment. ECF Nos. 1542, 1543. The parties' agreement included the following waiver provision:

> The Defendant further agrees to waive, and not to file, **any additional challenges, collateral attacks, motions to modify his sentence, motions to vacate his sentence, or any other motion, petition or pleading under any provision of law whatsoever to vacate, adjust, modify or reduce the sentence being imposed in this case** (criminal number JKB-09-0288). The Defendant agrees not to file any additional motions or pleadings pursuant to 28 U.S.C. § 2255. The Defendant agrees not to file any other challenge to his conviction or sentence, including, but not exclusive to a motion pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 2254, any motion or petition for other *habeas corpus* relief, any motion pursuant to the Federal Rules of Criminal Procedure, or the Federal Rules of Civil Procedure, any motion for *coram nobis*, **any motion to modify his sentence, or any other motion, petition or request to modify or vacate his conviction or sentence under any provision of law whatsoever**. The Defendant further acknowledges that a breach of this clause of the agreement would leave this Office free to withdraw from this agreement.

ECF No. 1543 at ¶ 5(e).

On June 28, 2016, this Court held a hearing on the matter. *See* ECF No. 1541, Miscellaneous Hearing as to Gregory Saulsbury. During the hearing, the Government moved to withdraw the § 851 Notice and, as promised, the parties jointly requested a sentence reduction to 264 months' imprisonment. *See* ECF No. 1578, Hearing Transcript. The Court questioned Petitioner on whether he understood the scope of the waiver:

> THE COURT: So a deal's been struck here, which is that in exchange for you withdrawing your 2255 and agreeing that you're not going to otherwise attack your

conviction or your sentence in this case, either through appellate proceedings or what we call post conviction proceedings, that is habeas corpus proceedings. In exchange for your agreeing to give up the right to pursue any of those remedies, what's going to happen on the other side of it is that your sentence is going to be reduced in this case from what it was before, that is life in prison, with ten years of supervised release, to 264 months of incarceration in the custody of the Bureau of Prisons, to be followed by 60 months or five years of supervised release. And any conditions or special conditions imposed by Judge Quarles will remain in full force and effect, because I'm not modifying any special conditions. Mr. Salisbury, are you following me on all this?

THE DEFENDANT: Yes, sir.

THE COURT: Is this what you want to do?

THE DEFENDANT: Yes, sir.

THE COURT: Have you had an adequate opportunity to talk with your lawyer about this?

THE DEFENDANT: Yes, sir.

*Id*. at 15-16.  Satisfied that Petitioner's waiver of any future post-conviction challenges was knowing and voluntary, this Court granted the joint motion and resentenced Petitioner to 264 months' imprisonment.  ECF No. 1544.

Petitioner now moves this Court to reduce his sentence pursuant to Section 404 of the First Step Act of 2018 to a sentence of 168 months – a reduction of 96 months, or eight years.  ECF No. 1856.  He argues that the waiver provision in the parties' 2016 agreement that netted him a substantial reduction in his sentence now has no effect, despite his knowing and voluntary acceptance of its terms.

The government opposes the requested relief.  First, Petitioner waived the right to challenge his sentence "under any provision of law whatsoever" when he entered into the 2016 agreement.  Second, Petitioner should not receive a Section 404 sentencing reduction because the large quantity of drugs trafficked in this conspiracy indicate that no sentencing disparity exists here.

4

**I.  The Court must uphold the waiver provision in Petitioner's 2016 agreement**

Petitioner's motion should be dismissed outright because he knowingly and intelligently waived his right to challenge his conviction or sentence, with no exceptions.  It is well-settled that a defendant's waiver of his right to appeal a conviction or sentence is valid and enforceable if such waiver was made knowingly and voluntarily.  *See United States v. Blick*, 408 F.3d 162, 168-171 (4th Cir. 2005); *United States v. General*, 278 F.3d 389, 399 401 (4th Cir. 2002); *United States v. Attar*, 38 F.3d 727, 731 (4th Cir. 1994).  The Fourth Circuit has applied this principle to post-conviction motions.  *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005) ("[A] criminal defendant may waive his right to attack his conviction and sentence collaterally, as long as the waiver is knowing and voluntary.").  The court in *Lemaster* further noted that "[e]very Circuit Court of Appeals to consider the issue" has similarly held that such waivers are permissible. *Lemaster*, 403 F.3d at 220.

Since Petitioner knowingly and intelligently waived his post-conviction rights, the government rightly seeks to have the waiver enforced.  "Plea bargains rest on contractual principles, and each party should receive the benefit of its bargain."  *Blick*, 408 F.3d at 173, quoting *United States v. Ringling*, 988 F.2d 504, 506 (4th Cir. 1993).  Petitioner argues that although he "waived certain rights" he could not waive a "right did not exist at the time he executed the waiver."  ECF No. 1856 at 5.  This contention, however, is in direct conflict with binding Fourth Circuit precedent.  The Court's decision in *Blick* makes clear that a defendant <u>can</u> waive a future right to collaterally attack his conviction or sentence.  *Blick*, 408 F.3d at 169.  In *Blick*, the Fourth Circuit rejected an argument by Defendant that his appeal waiver was not knowing because of a case (*United States v. Booker,* 534 U.S. 220 (2005)) he wanted to rely on to challenge his sentence had not been decided when he entered into the plea agreement.   The Court stated:

We [] reject Blick's contention that he could not have knowingly waived his rights under *Booker* – or that his *Booker* argument is necessarily outside the scope of the appeal waiver – because that case had not been decided when he entered into the plea agreement. In doing so, we join with the other circuits that have considered this type of argument since *Booker*.  *See United States v. Lockett*, 406 F.3d 207, 214, 2005 WL 1038937, at *5 (3d Cir. May 5, 2005) ("The record reflects that Lockett knowingly and voluntarily bargained for his plea agreement. He cannot now ask to re-bargain the waiver of his right to appeal because of changes in the law."); *United States v. Bradley*, 400 F.3d 459, 463 (6th Cir. 2005) ("A valid plea agreement ... requires knowledge of existing rights, not clairvoyance."); *United States v. Grinard-Henry*, 399 F.3d 1294, 1296 (11th Cir.), cert. denied, —— U.S. – ——, 125 S.Ct. 2279, —— L.Ed.2d ——, 73 U.S.L.W. 3672 (U.S. May 16, 2005) (No. 04–9566) ("An appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues...."); *United States v. Killgo*, 397 F.3d 628, 629 n. 2 (8th Cir.2005) ("The fact that Killgo did not anticipate the *Blakely* or *Booker* rulings does not place the issue outside the scope of his waiver."); *cf. United States v. Sahlin*, 399 F.3d 27, 30-31 & n. 3 (1st Cir.2005) (rejecting as "frivolous," in the context of an attempt to withdraw a guilty plea, the defendant's argument that his plea was not knowing and voluntary because he did not anticipate *Booker*); *see generally United States v. Ruiz*, 536 U.S. 622, 629, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) ("And the law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it.") (emphasis in original).

*Blick*, 408 F.3d at 169-70.  *See also United States v. Thompson*, 748 F. App'x 494, 497 (4th Cir. 2018) ("[t]he law ordinarily considers a waiver knowing, intelligent, and sufficiently aware if the defendant fully understands the nature of the right and how it would likely apply *in general* in the circumstances—even though the defendant may not know the *specific detailed* consequences of invoking it.") (quoting *United States v. Thornsbury*, 670 F.3d 532, 537 (4th Cir. 2012)) (emphasis in original). *See id.* ("a defendant who enters an appeal waiver 'assume[s] the risk of unforeseen legal errors involving his sentence,' as appeal 'waivers are valuable precisely because they cover unforeseen circumstances and thus add certainty to the criminal proceeding.'") (quoting *Thornsbury* at 538).  *See also United States v. Archie*, 771 F.3d 217, 222 (4th Cir. 2014) ("We

concluded Blick's claim was within the scope of his valid appeal waiver because, '[a]lthough the law changed after Blick pled guilty, his expectations (as reflected in the plea agreement) did not.'"

Thus, a knowing and voluntary waiver requires that the defendant simply know "the nature of the right" – here, the ability to seek collateral relief in general, as opposed to the specific bases on which they could exercise the right in the future. Petitioner does not contest that 18 U.S.C. § 3582(c)(1)(B) (the statute under which Section 404 motions are filed) was in effect when he negotiated and executed the binding agreement at issue here. In fact, the Fair Sentencing Act, which Section 404 made retroactive, was also in effect at the time the agreement was executed. Thus, the potential for a future § 3582(c)(1)(B) motion was not unforeseeable. The government unequivocally bargained for an all-encompassing waiver. Pursuant to *Blick*, the settlement agreement therefore must be honored and this petition must be rejected as violative of the parties' agreement.[2]

If this were not enough, *Blick*'s holding was recently reinforced by the Fourth Circuit, which recognized that "when a sentencing law undergoes a non-retroactive change, a defendant who waived his right to appeal a sentence imposed under the old regime remains bound by that waiver even if resentencing under the new regime might otherwise entitle him to new rights or subject him to different penalties." *United States v. Cornette,* 932 F.3d. 204, 210 (4th Cir. 2019).[3] Indeed, *Cornette* recognized that it would be highly improper to allow a defendant to renege on a waiver and seek to "re-bargain" his deal simply because of post hoc changes in the law. *Id.*

---

[2]    To be clear, the Government does not now invoke the remedy provision of the settlement agreement. *See* ECF No. 1543 at ¶ 5(e) ("a breach of this clause of the agreement would leave this Office free to withdraw from this agreement.").

[3]    *Cornette* ruled that an appeal waiver does not preclude a defendant from challenging a sentence "based on a constitutionally impermissible factor" or "a sentence imposed in excess of the maximum penalty provided by statute." *Cornette*, 932 F.3d at 209. Neither of these circumstances exists here.

Because the Petitioner here is trying to do precisely what *Cornette* and *Blick* forbid, his claims must be rejected and the waiver must be honored.

Petitioner further claims that his post-conviction waiver does not apply to "a Meritorious, Counseled Motion" for a sentence reduction based on a statutory change in the law.  ECF No. 1856 at 7.  Petitioner cites some very old cases that discuss waiver of "an unknown right," but outright ignores the binding authority, directly on point, in *Blick* and *Cornette*.

Petitioner relies heavily on *United States v. Olano*, 507 U.S. 725 (1993), but *Olano* is in no way on point here, as it merely touched on the differences between waiver and forfeiture while clarifying the standard for "plain error" review by the courts of appeals under Rule 52(b).  *Olano*, 507 U.S. at 731.  As such, in this context, it is nothing more than dicta.

*Nelson v. Peyton*, 415 F.2d 1154 (4th Cir. 1969) is inapposite because it involved a defendant with "a mental age of eleven years and an IQ of 73" who unwittingly waived his right to appeal his criminal conviction because  he was never even told that such a right existed.  *Peyton*, 415 F.2d at 1155.  Nor does *Hensley v. United States*, 406 F.2d 481 (10th Cir. 1968) support Petitioner's argument, as it found that a defendant cannot waive his *Miranda* rights without having knowledge such rights existed in his particular type of case (tax evasion).  *Hensley*, 406 F.2d at 484.  Petitioner was never deprived of any knowledge of his existing rights.  Rather, he knew he could file post-conviction motions to challenge his sentence because he had already done so.  And he was fully informed at every step of the proceedings that he was giving up that right going forward.

Petitioner has cited no other binding case law, but does cite a motley collection of inapposite, nonbinding decisions to distract from the fact that *Blick* and *Cornette* bar the relief he now requests.  *United States v. McBride*, 826 F.3d 293 (6th Cir. 2016) (defendant could not waive

unknown future right to *Johnson*[4] relief) is in direct conflict with *Blick*, which as discussed above, found that that a defendant <u>can</u> waive a future right to collaterally attack his conviction or sentence. *Blick*, 408 F.3d at 169.  And to the extent *McBride* may appear similar to the *Cornette* decision – *Cornette* is materially different, as it was driven by a constitutionally erroneous Armed Career Criminal sentence that resulted in a 15-year mandatory minimum where a 10-year maximum sentence should have applied.[5]  *Cornette*, 932 F.3d at 209 (appeal waiver did not preclude a defendant from challenging a sentence "based on a constitutionally impermissible factor" or "a sentence imposed in excess of the maximum penalty provided by statute.").[6]

In any event, *McBride* is off the mark here because, as Petitioner acknowledges, the defendant "impliedly" waived a challenge to his career offender enhancement by simply stipulating that he was a career offender.  There was no iron clad, express waiver of known post-conviction rights, as there was here.  The same can be said about the Ninth Circuit's decision in *United States v. Lightfoot*, 626 F.3d 1092 (9th Cir. 2010), which Petitioner also cites, but which only involved a bare bones appellate and collateral waiver.  *Lightfoot*, 626 F.3d at 1094 (defendant simply waived his "right to collaterally attack any aspect of my conviction or sentence, except for

---

[4]     As the Court well knows, the Supreme Court ruled in *Johnson* that the residual clause of the Armed Career Criminal Act's definition for violent felony, at 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague.  *Johnson v. United States*, 135 S.Ct. 2551, 2558 (2015).

[5]     Petitioner's citation to *Dumas v. Clarke*, 2017 WL 3446640, at *3 (E.D. Va. July 14, 2017) is similarly infirm because Dumas' "<u>rights under the Eighth Amendment</u> were violated pursuant to *Miller* and *Montgomery*" because he was a juvenile sentenced to life imprisonment without any consideration of his youth.

[6]     In any event, the Supreme Court's decision in *Beckles v. United States* abrogates that portion of *McBride*.  *Beckles* held that the rule announced in *Johnson* does not apply to the career-offender guideline because the advisory sentencing guidelines "are not subject to a due process vagueness challenge."  *Beckles v. United States*, 137 S. Ct. 886, 897 (2017).

a challenge based upon ineffective assistance of counsel ... which affected either my guilty plea or the sentence imposed by the court.").[7]

Finally, the Fourth Circuit's decision in *United States v. Yooho Weon*, 722 F.3d 583 (4th Cir. 2013) is binding authority, but does not apply here. *Yooho Weon* concerned ambiguities in plea agreements. *See Yooho Weon*, 722 F.3d at 588. However, there is no ambiguity here, as shown by the four corners of the text of the waiver provision:

> The Defendant further agrees to waive, and not to file, **any additional challenges, collateral attacks, motions to modify his sentence, motions to vacate his sentence, or any other motion, petition or pleading under any provision of law whatsoever to vacate, adjust, modify or reduce the sentence being imposed in this case** (criminal number JKB-09-0288). The Defendant agrees not to file any additional motions or pleadings pursuant to 28 U.S.C. § 2255. The Defendant agrees not to file any other challenge to his conviction or sentence, including, but not exclusive to a motion pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 2254, any motion or petition for other *habeas corpus* relief, any motion pursuant to the Federal Rules of Criminal Procedure, or the Federal Rules of Civil Procedure, any motion for *coram nobis*, **any motion to modify his sentence, or any other motion, petition or request to modify or vacate his conviction or sentence under any provision of law whatsoever**. The Defendant further acknowledges that a breach of this clause of the agreement would leave this Office free to withdraw from this agreement.

ECF No. 1543 at ¶ 5(e). The post-conviction motion filed in this case is clearly within the scope of the waiver of any motion "under and provision of law whatsoever." Barring a violation of Petitioner's constitutional rights or a sentence in excess of the law, *see Cornette*, 932 F.3d at 209, he simply cannot now renege on his knowing and voluntary agreement to abstain from such filings.

Petitioner will no doubt reply by pointing to a recent district court decision – *United States v. Ellerby*, No. CCB-07-064, ECF No. 319 (D. Md. May 12, 2020) – in which the Court granted a sentence reduction over the Government's objection and despite a similar post-conviction waiver

---

[7]   To be clear, the Government does not concede that *Lightfoot* was rightly decided, but simply points out it is inapposite because it does not involve the iron clad, express waiver provision at issue here.

provision.  *Ellerby* is a nonbinding district court decision that failed to consider the binding authority in *Blick* and *Cornette*, and which the government intends to seek authority to appeal. Pointedly, *Blick* and *Cornette* control and bind this Court; *Ellerby* does not.  This Court should follow *Blick* and *Cornette*.

The 2016 agreement was negotiated in good faith and Petitioner entered into the agreement knowingly and voluntarily.  The parties' intent was clear – Petitioner would not file *any* further postconviction motions.  Thus, the plain language of the agreement makes clear that the instant petition is barred.  To disregard the good-faith agreement of the parties now could have a chilling effect on future negotiations.  The government urges this Court to honor the parties' binding agreement entered into before this Court, and deny any relief in this matter.

## II.  Petitioner's request for a sentence reduction pursuant to Section 404 of the First Step Act should be denied

In the event this Court disregards the parties' agreement and its waiver provision, the government further asks that the Court deny the motion on its merits.

### A.  LEGAL FRAMEWORK

Section 404 of The First Step Act of 2018, Public Law No. 115-015, permits this Court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence on certain offenses in accordance with the Fair Sentencing Act of 2010, if no such reduction was previously granted.  First Step Act of 2018, Pub. L. No. 115-015, § 404, 132 Stat 015, 015 (2018).  The section expressly provides that any relief is discretionary.  *Id*. ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."). Section 404 reads:

**SEC. 404. Application of Fair Sentencing Act.**

(a) Definition of covered offense.—In this section, the term "covered

offense" means a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372), that was committed before August 3, 2010.

(b) Defendants previously sentenced.—A court that imposed a sentence for a covered offense may, on motion of the defendant, the Director of the Bureau of Prisons, the attorney for the Government, or the court, impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) were in effect at the time the covered offense was committed.

(c) Limitations.—No court shall entertain a motion made under this section to reduce a sentence if the sentence was previously imposed or previously reduced in accordance with the amendments made by sections 2 and 3 of the Fair Sentencing Act of 2010 (Public Law 111–220; 124 Stat. 2372) or if a previous motion made under this section to reduce the sentence was, after the date of enactment of this Act, denied after a complete review of the motion on the merits. Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.

First Step Act of 2018, Pub. L. No. 115-015, § 404, 132 Stat 015, 015 (2018).

Substantively, § 404(b) of the First Step Act provides that a court "may" in its discretion "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 […] were in effect at the time the covered offense was committed." The Fair Sentencing Act of 2010, which took effect on August 3, 2010, reduced the disparity in the treatment of cocaine base and powder cocaine offenses from 100-to-1 to 18-to-1. *See Dorsey v. United States*, 567 U.S. 260, 264 (2012); Pub. L. No. 111-220, 124 Stat. 2372. Section 2 of the Fair Sentencing Act reduced the penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1)(A) and (B).[8] Pub. L. No. 111-220, § 2, 124 Stat 2372. Specifically, the quantity of cocaine base necessary to trigger the 5-year

---

[8]     Section 3 of the Fair Sentencing Act, which is not at issue here, eliminated the mandatory minimum sentence for simple possession. *See* Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 3, 124 Stat 2372, 2372 (2010).

mandatory minimum under § 841(b)(1)(B) was increased from 5 grams of cocaine base to 28 grams, and the quantity necessary for the 10-year minimum under § 841(b)(1)(A) was increased from 50 grams to 280 grams. *Dorsey*, 567 U.S. at 269; Section 2(a), 124 Stat. 2372. Thus, a "covered offense," which is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010 […], committed before August 3, 2010," is an offense where the statutory penalty range has changed because it was based on a certain quantity of crack cocaine.

Procedurally, the proper mechanism for reduction motions invoking Section 404 is found in 18 U.S.C. § 3582(c)(1)(B). Section 3582(c)(1)(B) provides that a "court may not modify a term of imprisonment once it has been imposed except that – (1) in any case – […] (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute[…]." And indeed, Section 404 of the First Step Act expressly authorizes by statute changes to the penalty range for certain long-final sentences. As discussed above, relief is discretionary. First Step Act, § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

### B. ANALYSIS

Petitioner requests relief under Section 404. It is the government's position that Petitioner is ineligible for relief, and the government alternatively requests that the relief be denied as a matter of discretion.

### 1. Petitioner is not entitled to relief because his offense involved between 500 grams and 1.5 kilograms of cocaine base.

It is the government's position that Petitioner was not convicted of a "covered offense" as required by the Fair Sentencing Act, because it was proven at trial that his offense involved more than 500 grams but less than 1.5 kilograms of cocaine base. PSR at ¶ 14. Because the Fair

Sentencing Act increased the quantity necessary for the 10-year minimum under § 841(b)(1)(A)(iii) from 50 grams to *280 grams*, this quantity would have resulted in the same statutory penalty both before and after the Act.

The government recognizes, however, that the Fourth Circuit's recent decision in *United States v. Wirsing*, 943 F.3d 175 (4th Cir. Nov. 20, 2019) is now circuit precedent.[9]  The government acknowledges that *Wirsing* is controlling for this Court on this issue, but we do not concede that the case was decided correctly, and we thus note our objection and preserve our argument for purposes of any subsequent appeal in this case or others.  Specifically, the government's position is that actual quantities should matter in eligibility determinations, as the sole change effected by the Fair Sentencing Act that the First Step Act made retroactive was an adjustment of quantity thresholds.  The portion of the Fair Sentencing Act at issue, which focused entirely on drug quantities, simply stated:

SEC. 2. COCAINE SENTENCING DISPARITY REDUCTION.

(a)      CSA.—Section 401(b)(1) of the Controlled Substances Act (21 U.S.C. 841(b)(1)) is amended—

(1) in subparagraph (A)(iii), by striking "50 grams" and inserting "280 grams;" and

(2) in subparagraph (B)(iii), by striking "5 grams" and inserting "28 grams."

Section 2(a), 124 Stat. 2372.  The result was a simple modification of the statute's quantity requirements.  Drug quantities obviously differ from case to case.  By simply amending the quantity thresholds, Congress was requiring courts to focus on the relevant quantities in each case.

---

[9]      The Fourth Circuit held in *Wirsing* that "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii), and who are not excluded pursuant to the expressed limitations in Section 404(c) of the First Step Act, are eligible to move for relief under that Act."  *Wirsing*, 943 F.3d at 186.

The First Step Act's plain text shows that Congress, in enacting § 404, was concerned about a particular class of cocaine base defendants – those whose statutory penalties would have been lower but for the fact that they were sentenced before August 3, 2010, and, therefore, could not take advantage of the Fair Sentencing Act.  *See Dorsey v. United States*, 567 U.S. 260, 264 (2012) (concluding that the Fair Sentencing Act's more lenient penalty provisions apply to defendants sentenced after August 3, 2010, whether or not their crimes were committed before that date). Every defendant charged and sentenced today for the exact crime Petitioner committed would face the same statutory penalty range he faced.

Here, because Petitioner's conspiracy conviction involved more than at least 500 grams of cocaine base, well above the amount contemplated by the current 280-gram threshold in § 841(b)(1)(A)(iii), there was no cocaine base-related disparity with respect to his statutory penalty range.  While this Court may be constrained by the *Wirsing* decision from finding Petitioner ineligible, the Court can deny relief as a matter of discretion.

## 2.   Petitioner is not entitled to a plenary resentencing.

Petitioner argues that the Court should calculate his guidelines sentencing range without his career offender classification.  ECF No. 1856 at 11 (referring to the "*applicable* quantity-driven guideline range.") (emphasis added); *see id*. ("Without the career-offender enhancement, today Mr. Saulsbury faces a base offense level of 30 under § 2D1.1.").  Should the Court grant relief – over the government's objections on the multiple grounds discussed above – the Court should decline to recalculate the applicable guideline range in this manner.  A sentence once imposed is final, subject to such exceptions as Congress has allowed.  *United States v. Addonizio*, 442 U.S. 178, 189 (1979).  Though "[a] district court does not have inherent authority to modify a previously

imposed sentence; it may do so [...] pursuant to statutory authorization." *United States v. Smartt*, 129 F.3d 539, 540 (10th Cir. 1997) (quotations omitted).

Petitioner's attempt to re-litigate the Court's original career offender determination under today's legal framework is improper.  Obtaining relief under § 3582(c)(1)(B) does not affect the finality of the original sentence and judgment.  *United States v. Sanders*, 247 F.3d 139, 142-43 (4th Cir. 2001).  That Section, instead, provides authorization for courts to modify previously imposed sentences "to the extent [...] expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see also Wirsing*, 943 F.3d at 185 ("[I]n determining eligibility under § 3582(c)(1)(B), courts must look to the applicable statute to determine 'the extent' to which modification is 'expressly permitted by [that] statute.').

The relevant statute – Section 404 of the First Step Act – provides that courts "may [. . .] impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  First Step Act, § 404(b) (internal citations and parentheticals omitted).  Accordingly, the Act grants courts the discretion to reduce the sentence of eligible persons only to the extent that their sentences would have been different if Sections 2 or 3 of the Fair Sentencing Act of 2010 had applied at the initial sentencing.  *Id.* Indeed, the Fourth Circuit has stated that "[A] district court should 'plac[e] itself in the time frame of the original sentencing, altering the relevant legal landscape only by the changes mandated by the 2010 Fair Sentencing Act.'" *United States v. Venable*, 943 F.3d 187, 187 (4th Cir. 2019) (quoting *United States v. Hegwood*, 934 F.3d 414, 418 (5th Cir. 2019)); *United States v. Brooks*, 788 F. App'x 213, 214 (4th Cir. 2019) (same); *United States v. Curry*, 792 F. App'x 267, 268 (4th Cir. 2020) (same); *but see United States v. Chambers*, 2020 WL 1949249, at *6 (4th Cir. Apr. 23, 2020) (permitting

courts reducing sentences under the First Step Act to correct <u>retroactive</u> Guidelines errors that are based on intervening case law).

Therefore, a sentence modification under the First Step Act is not a plenary proceeding that allows vacatur of aspects of sentencing like career offender designations. Rather, it is a limited adjustment to an otherwise final sentence. *See*, *e.g.*, *Brooks*, 788 F. App'x at 214; *Curry*, 792 F. App'x at 268; *Hegwood*, 934 F.3d at 417-19; *Brown v. United States*, No. CR ELH-00-0100, 2020 WL 1248950, at *6 (D. Md. Mar. 16, 2020) (finding "the majority of courts have declined to conduct plenary resentencing proceedings" and collecting cases); *United States v. Robinson*, 2019 WL 5967967, at *6 (W.D. Va. Nov. 13, 2019) ("the First Step Act does not expressly permit plenary resentencing" and therefore the defendant was "not entitled to modification of his status as a career offender"). *See also Wirsing*, 943 F.3d at 182 n. 1 ("Defendant does not contest that his relief, if any, will be in the form of a limited sentence modification rather than a plenary resentencing").

Applying the legal landscape at the time of Petitioner's offense, and accounting for any retroactive intervening changes in the law, Petitioner still qualifies as a career offender. *See* PSR at ¶ 22 (citing two prior drug trafficking offenses). The Fourth Circuit's decision in *United States v. Norman*, 935 F.3d 232 (4th Cir. 2019), which Petitioner relies on, has not been made retroactive and, therefore, its holding does not apply here. *See Chambers*, 956 F.3d at 674 (only permitting courts to correct <u>retroactive</u> Guidelines errors in reducing sentences under the First Step Act). *See also*, *e.g.*, *United States v. Johnson*, 2020 WL 2563541, at *5 (W.D. Va. May 20, 2020) (declining to modify career offender status or calculate guidelines without career offender enhancement because *Norman* was not made retroactive); *United States v. Kelley*, 2020 WL 3168518, at *1 (9th

Cir. June 15, 2020) (The First Step Act does not permits "a plenary resentencing proceeding in which a defendant's career offender status can be reconsidered.").

Additionally, Petitioner argues that he would not be subject to an § 851 enhancement if prosecuted today.  ECF No. 1856 at 12 ("it is hard to imagine that were Mr. Saulsbury convicted today, he would actually face a 20-year mandatory-minimum penalty or a maximum of life").  It is inappropriate for Petitioner to ask this Court to reduce his sentence to one which would be imposed in the present day, for the same reasons discussed above.

Moreover, in proposing a sentence without the § 851 enhancement, Petitioner is inappropriately asking this Court to apply a different provision of the First Step Act – Section 401– retroactively despite the Act's express provision not to do so.  *See* First Step Act, § 401(c).  Section 401 lowered the statutory-minimum sentences under Section 841(b)(1)(A) for recidivists and also changed the definition of qualifying predicate offenses.  Petitioner essentially seeks to benefit from this revision.  However, Section 401(c) provides: "[t]his section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of the date of such enactment."  First Step Act, § 401(c) (emphasis added).  Petitioner was sentenced in July 2010, many years prior to the First Step Act.  Therefore, it is inappropriate for Petitioner to even seek this relief.  Even more significantly, he is simply ineligible for any relief that resulted from the modifications to § 401.

### III.   The Court should consider the factors set forth in 18 U.S.C. § 3553(a) and deny relief

The factors set forth in 18 U.S.C. § 3553(a) support a discretionary denial of a sentence reduction in this case.  "Nothing in [Section 404] shall be construed to require a court to reduce any sentence pursuant to this section.").  First Step Act, § 404(c).  Thus, § 3553(a) factors are

highly relevant in determining whether a defendant should receive a discretionary reduction of sentence.

Section 3553(a) provides that "[t]he court shall impose a sentence sufficient, but not greater than necessary," to comply with the purposes described in § 3553(a)(2):

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2)(A)-(D).  In imposing the sentence, the court shall consider *inter alia* "the nature and circumstances of the offense and the history and characteristics of the defendant."  18 U.S.C. § 3553(a)(1).[10]

Here, the nature and circumstances of the offense are an important consideration.  18 U.S.C. § 3553(a)(1).  Petitioner was involved in a conspiracy that involved a large quantity of street narcotics, and he served as a supplier of those narcotics to the violent Bloods street gang – presenting a great potential for harm to the community.  Your Honor recently emphasized "the

---

[10]     Additionally, the Court may consider an eligible defendant's post-sentencing conduct in determining whether relief is appropriate.  *See Pepper v. United States*, 562 U.S. 476 (2011).  The government acknowledges that Petitioner's conduct in the Bureau of Prisons has been good, with the exception of three disciplinary infractions, as required.  *See* Petitioner's Exhibit 14.  However, as your Honor recently observed – good conduct in prison should not be considered extraordinary. ECF No. 193 at 2, in *United States v. Blackwell*, case no. JKB-10-cr-00493 ("Although **all inmates are expected to behave while they are incarcerated**, and to progress through the security rating process, not all do. **All inmates are expected to adhere to their programmatic regimens**, including, when appropriate, obtaining a GED, but, again, not all do.") (emphasis added).

correlation between illegal drug trafficking and violent crime."  In *United States v. Blackwell et al.,* Crim. No. JKB-10-0493 (February 19, 2020), ECF 193 at 3-4, you wrote:

> There is no serious dispute that the illegal drug business brings with it violence, often lethal and on a large scale. The Court finds and concludes that those who participate in and profit from large scale, illegal drug trafficking activities are engaging in conduct that at least indirectly leads to widespread violence.

The fact that violence is inherent in large scale drug-trafficking is uncontroversial.  Additionally, the large quantity of cocaine (5 kilograms) and cocaine base (1.5 kilograms) indicates that no disparity demands correction.

As the Government noted at sentencing, Petitioner "lived a life-style that was typical of a high-level drug dealer," driving expensive cars, including an Infiniti and a Land Rover.  ECF No. 821, Sentencing Transcript at 3.

The need to afford adequate deterrence to criminal conduct crime and promote respect for law is also important here.  18 U.S.C. § 3553(a)(2)(A) & (B).  The First Step Act has not changed Petitioner's guidelines sentencing range or statutory penalty range.  The guidelines range remains 360 months to life imprisonment, and Petitioner's sentence is already well below it.  Moreover, Petitioner already received a substantial reduction in his sentence, as discussed above.

The history and characteristics of the Petitioner are also an important consideration, and his criminal history should also be considered.  18 U.S.C. § 3553(a)(1).  Petitioner was previously charged with four similar drug trafficking offenses in the Circuit Court for Baltimore City – case no. 0466417B0, which resulted in a simple possession conviction, and case nos. 595170044, 195123053, and 298321003, which resulted in drug trafficking convictions.  PSR at ¶¶ 29, 30, 31, 32.  These prior convictions resulted in Petitioner's designation as a career offender and a criminal history category of VI, and indicate that Petitioner presents a danger to the community.

Petitioner was also previously convicted of a violent criminal offense – Maryland robbery

with a deadly weapon, in Baltimore City Circuit Court (case no. 28214624).  PSR at ¶ 28.  The

Fourth Circuit has unequivocally held that this crime is a violent felony.  *United States v. Bell*, 901

F.3d 455, 472 (4th Cir. 2018), *cert. denied*, 140 S. Ct. 123 (2019).

Petitioner also has performed poorly in supervision, as shown by his 2003 violation of

probation for which he was sentenced to five years in the Maryland Division of Corrections.  PSR

at ¶ 32.  Moreover, Petitioner incurred numerous disciplinary infractions in the Bureau of Prisons,

many involving use or possession of drugs and or alcohol.  *See* Petitioner's Exhibit Twelve.

Nothing has changed since Petitioner's sentence was reduced pursuant to the parties'

agreement, and this Court should decline to make any further adjustments to this sentence.  For all

the reasons discussed above, this Court should decline to reduce Petitioner's sentence.

## <u>CONCLUSION</u>

For all the reasons discussed herein, a sentence reduction is unwarranted.  The Government

respectfully requests this Court deny Petitioner's motion.

Respectfully submitted,

Robert K. Hur
United States Attorney

By:   _____/s/_____

Ellen E. Nazmy
Special Assistant United States Attorney

_____/s/_____

David I. Salem
Assistant United States Attorney

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on July 2, 2020, a copy of the foregoing Response was delivered via ECF to Shari S. Derrow, Esquire, counsel for the Petitioner.

By:      _____/s/_____
         Ellen E. Nazmy
         Special Assistant United States Attorney