IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | CRIMINAL NO. JKB-09-0288 |
| GREGORY SAULSBURY, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Defendant Gregory Saulsbury has submitted a Motion for Imposition of a Reduced Sentence Pursuant to Section 404 of the First Step Act. (Mot. Reduce Sentence, ECF No. 1856.) The Government opposes the motion. (Opp'n Mem., ECF No. 1905.) The matter is fully briefed, and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons set forth below, the Court will grant Saulsbury's motion in part and reduce his sentence to 180-months imprisonment.

*I.    Background*

On March 25, 2010, a jury found Saulsbury guilty of one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of crack cocaine, in violation of 21 U.S.C. § 846. (ECF No. 682.) The quantity of drugs attributed to him resulted in a base offense level of 34. (PSR ¶ 14.) Saulsbury's prior criminal convictions led the Probation Officer to conclude that Saulsbury met the definition of a career offender under U.S.S.G. § 4B1.1, which raised Saulsbury's offense level to 37 and his criminal history category to category VI. (*Id.* ¶¶ 22, 34.) This resulted in a guidelines range of 360 months to life. (*Id.* ¶ 54.) The Government, however, filed a notice

of three prior felony drug convictions pursuant to 21 U.S.C. § 851, which resulted in a statutory mandatory minimum of life. (Statement of Reasons, ECF No. 771.)

On July 15, 2010, Judge William Quarles imposed a mandatory life sentence, followed by ten years of supervised release. (ECF No. 770.) Saulsbury appealed his conviction and sentence and the Fourth Circuit affirmed. (ECF No. 1071.)

Following the Fourth Circuit's ruling, Saulsbury filed a counseled motion under 28 U.S.C. § 2255 alleging his trial counsel had provided ineffective assistance. (ECF No. 1208.) The matter was subsequently reassigned to the undersigned. The Government initially opposed the § 2255 motion, but the parties later reached an agreement and jointly requested that the Court reduce Saulsbury's sentence to 264-months imprisonment. (ECF No. 1543.) As a part of the agreement, Saulsbury agreed to sign an appellate waiver stating the following:

> "The Defendant further agrees to waive, and not to file, any additional challenges, collateral attacks, motions to modify his sentence, motions to vacate his sentence, or any other motion, petition or pleading under any provision of law whatsoever to vacate, adjust, modify or reduce the sentence being imposed in this case (criminal number JKB-09-0288). The Defendant agrees not to file any additional motions or pleadings pursuant to 28 U.S.C. § 2255. The Defendant agrees not to file any other challenge to his conviction or sentence, including, but not exclusive to a motion pursuant to 28 U.S.C. § 2241, 28 U.S.C. § 2254, any motion or petition for other habeas corpus relief, any motion pursuant to the Federal Rules of Criminal Procedure, or the Federal Rules of Civil Procedure, any motion for *coram nobis*, any motion to modify his sentence, or any other motion, petition or request to modify or vacate his conviction or sentence under any provision of law whatsoever. The Defendant further acknowledges that a breach of this clause of the agreement would leave this Office free to withdraw from this agreement."

*Id.* ¶ 5e.

On June 28, 2016, the Court held a hearing on the motion. (ECF No. 1578.) The Court accepted the parties' agreement and reduced Saulsbury's sentence to 264-months incarceration, followed by 5 years of supervised release.[1] (ECF No. 1544.)

---

[1] During the hearing, the Government agreed to partially withdraw the § 851 notice such that the Court was no longer obligated to impose a mandatory life sentence. (ECF No. 1578 at 3–4.)

On March 25, 2019, almost three years after the parties entered into the 2016 agreement, Saulsbury filed *pro se* a motion to reduce his sentence under the First Step Act. (ECF No. 1784.) The Court appointed the Federal Public Defender to represent Saulsbury in the matter and defense counsel filed a motion to reduce his sentence on March 4, 2020. (Mot. Reduce Sentence.) The Government opposes the motion. (Opp'n Mem.)

The parties agree that Saulsbury is eligible to move for relief under the First Step Act under *United States v. Wirsing*, 943 F.3d 175 (4th Cir. 2019), *as amended* (Nov. 21, 2019),[2] but they dispute two issues: (1) whether Saulsbury waived his right to relief as a result of the 2016 agreement, and (2) if he did not, whether a sentence reduction is appropriate in light of the relevant sentencing factors.

II. Analysis

    a. Waiver

A "waiver is the 'intentional relinquishment or abandonment of a known right.'" *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)). A valid waiver of appellate rights requires that the defendant make a "'knowing and intelligent decision'" regarding his right to appeal. *United States v. General*, 278 F.3d 389, 400 (4th Cir. 2002) (quoting *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992)). Because such agreements are "usually drafted by the [G]overnment" and "implicate a defendant's constitutional rights," courts "will enforce an appellate waiver provision against a defendant only if that provision is clearly and unambiguously applicable to the issues raised by the defendant on appeal." *United States v. Yooho Weon*, 722 F.3d 583, 588 (4th Cir. 2013).

---

[2] The Government, however, notes its objection to *Wirsing* to preserve its argument in the event of any subsequent appeal of this case or *Wirsing*. (Opp'n Mem. at 14–15.)

The Government argues that Saulsbury waived his right to relief under the First Step Act because of the broad appellate waiver he signed.  (Opp'n Mem. at 10.)  The waiver stated that Saulsbury waived his right to seek a sentence reduction "under any provision of law whatsoever[,]" which the Government argues plainly includes the First Step Act.  (*Id.*)  Even though the First Step Act did not exist at the time Saulsbury signed the waiver, the Government argues the waiver was nonetheless knowing and voluntary under *United States v. Blick*, 408 F.3d 162, 164 (4th Cir. 2005), and related cases.  (*Id.* at 7.)  According to the Government, these cases stand for the proposition that a defendant can knowingly and voluntarily waive rights not yet known to exist at the time a defendant signs an appellate waiver.  (*Id.*)

Saulsbury counters that he "could not knowingly and voluntarily waive a right that did not exist at the time of the parties' 2016 agreement and that the parties and the Court had no way of foreseeing."  (Mot. Reduce Sentence at 7.)  Such a conclusion, Saulsbury argues, would undermine the requirement that waivers be the "intentional relinquishment . . . of a known right."  (*Id.* (citing *Olano*, 507 U.S. at 733.))  The *Blick* line of cases does not hold otherwise, Saulsbury contends, because the context in which those cases arose is so different from the First Step Act context as to render those cases "totally inapposite."  (Reply at 3–4, ECF No. 1911.)

The Court agrees with Saulsbury.  The Fourth Circuit has not yet addressed whether and when a pre-First Step Act appellate waiver can encompass a right to relief under the First Step Act, but some other district courts have addressed the question and have ruled in the defendant's favor. *See, e.g.*, *United States v. Ellerby*, Crim. No. CCB-07-064, 2020 WL 3868997, at *1 (D. Md. July 9, 2020) (finding that a defendant who waived his right to file "any future post-conviction motions" had not waived his right to file a motion for a sentence reduction under the First Step Act); *United States v. Johnson*, Crim. No. LTS-06-4031, 2019 WL 3938472, at *10 (N.D. Iowa Aug. 20, 2019)

4

(defendant "did not knowingly waive his right to apply for a sentence reduction" under the First Step Act because "defendant's appeal waiver does not explicitly contemplate a sentence reduction pursuant to a statutory change in the sentencing range").[3]

The Court finds the reasoning articulated in these cases, as well as Saulsbury's arguments, to be persuasive.  First, as Saulsbury notes, the waiver at issue could have "either expressly included or expressly excluded the right to pursue a sentence reduction pursuant to newly-passed legislation[,]" but the waiver, notably, did not.  (Mot. Reduce Sentence at 8.)  Second, as Judge Blake explained in *United States v. Ellerby*, the *Blick* line of cases is not on point here.  *See* 2020 WL 3868997, at *2–4.  In the *Blick* line of cases, the Fourth Circuit emphasized that a defendant can, in some circumstances, knowingly waive his right to appeal or attack his sentence even if there is a relevant subsequent change in sentencing law.  *See Blick*, 408 F.3d at 170.  But a motion for a sentence reduction under the First Step Act is not an appeal or an attack on a sentence; it is a request that a court, in its newly afforded discretion, reduce a sentence that is otherwise valid and lawful.  *See Ellerby*, 2019 WL 3938472, at *3.  Additionally, *Blick* involved the waiver of a right to appeal a "non-retroactive" change in sentencing law derived from a Supreme Court decision, *see Blick*, 408 F.3d at 170, not a right to seek relief under a newly enacted statute that expressly makes certain statutory changes retroactive, *see United States v. Chambers*, 956 F.3d 667, 671–72 (4th Cir. 2020).  Because of these key differences, the Court is not persuaded that the precedent the Government relies upon applies here.

---

[3]   Some courts have also addressed the waiver issue in the context of motions brought pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) (the "compassionate release statute"), which was also amended as part of the First Step Act.  These courts have similarly resolved the waiver issue in favor of the defendant.  *See United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019) ("The government also argued that [defendant] had waived his right to seek compassionate release under 18 U.S.C. § 3582 in his plea agreement. . . . This argument was not at all well taken.  Waiver is the relinquishment of a known right.  The First Step Act amended Section 3582 and was passed after his sentence, so he could not have waived the rights it contains."); *United States v. Burrill*, Crim. No. RS-17-00491, 2020 WL 1846788, at *2 (N.D. Cal. Apr. 10, 2020) (reaching the same conclusion).

5

Instead, applying the "heightened standard" of review that courts must apply when interpreting appellate waivers entered by criminal defendants, *Yooho Weon*, 722 F.3d at 588, and recognizing that a wavier is only valid if it is the "intentional relinquishment . . . of a known right," *Olano*, 507 U.S. at 733, the Court concludes Saulsbury did not waive his right to seek a sentence reduction under a unique statute that did not exist at the time he entered into the 2016 agreement.

### b. *Sentencing factors*

Having concluded Saulsbury did not waive his right to relief under the First Step Act, the Court now considers whether a sentence reduction is appropriate in light of the relevant sentencing factors.

In determining the relevant Federal Sentencing Guidelines, the Court notes Saulsbury's calculations as to the penalties he would face if prosecuted today, but for the purposes of this case only, the Court adopts the Government's position that the applicable statutory range remains 360 months to life. (Opp'n Mem. at 20.)

However, in calculating a sentence reduction, the Court has the authority and responsibility to apply all of the 18 U.S.C. § 3553(a) factors. First, considering the "history and characteristics" of the defendant, the Court finds Saulsbury has a significant criminal history with multiple prior drug-related convictions from when he was in his early 30s. (PSR ¶¶ 29–32.) Saulsbury was also convicted of committing robbery with a deadly weapon when he was 19 years old. (*Id.* ¶ 28.) Although this criminal history is significant, Saulsbury is now 57 years old, and these prior convictions provide limited insight into the person he is today.

As for the "nature and circumstances" of the offense, Saulsbury was part of a conspiracy that distributed significant quantities of crack cocaine. (*Id.* ¶ 8.) Although other members of the conspiracy committed acts of violence, Saulsbury was not convicted of engaging in violent

6

conduct, and as the Government noted during the 2016 hearing, Saulsbury's case was a "straight drug case." (ECF No. 1578 at 18.) Considering the "seriousness of the offense," the Court finds the offense was unquestionably serious by virtue of the quantity of drugs associated with the conspiracy.

As for the need for "adequate deterrence," a substantial term of incarceration is warranted to dissuade Saulsbury and others from this sort of serious misconduct in the future. The Court also finds that the need to "protect the public" is a significant factor in this sentence because of Saulsbury's criminal history and the quantity of drugs involved in the conspiracy.

Regarding the "need to avoid unwarranted sentencing disparities" among defendants with similar records and culpability, the Court has carefully considered the penalties imposed on others with similar records in similar and dissimilar cases. This includes reviewing the sentences received by Saulsbury's co-defendants, several of whom admitted to engaging in violence and/or possessing and using firearms in furtherance of gang activity (*see* ECF Nos. 523 ¶ 6; 533 ¶ 6, 857 ¶ 6), and yet are serving sentences of 262-months imprisonment, two months less than Saulsbury is currently serving.

As for Saulsbury's post-sentencing conduct, Saulsbury has participated in a range of programing, including programs involving self-management, anger management, and a parenting class. (*See* Mot. Reduce Sentence, Ex. 1.) He has also made progress towards earing his GED (*see* Mot. Reduce Sentence, Ex. 2), and he has maintained close ties with family and loved ones during the time he has been incarcerated (*see* Mot. Reduce Sentence, Exs. 3–11). Saulsbury has, however, had several infractions while in BOP custody, largely related to using or possessing drugs

or alcohol.  (*See* Mot. Reduce Sentence, Ex. 12.)  "Training and treatment" are not significant factors in this sentencing decision.

Taking under advisement the Federal Sentencing Guidelines, the Court has concluded that a guidelines sentence in this case is 360 months to life.  The Court finds this is disproportionate to the sentences given to other defendants charged with non-violent drug offenses and is not appropriate in light of the other particular circumstances of this case.

Application of all relevant considerations, including the § 3553(a) factors as referenced above, causes the Court to conclude that there should be a sentence reduction and that the sentence that is sufficient but not more than necessary is 180 months of incarceration, to be followed by five years on supervised release.  All other terms of the sentence imposed not altered by this memorandum remain in full force and effect and will be reflected in the amended judgment and commitment order.  This is a variant sentence under 18 U.S.C. § 3553, and it is the sentence the Court deems appropriate regardless of the exact computation of the guidelines at this late stage. To be clear, even if the guidelines were computed differently in this case, the sentence would nonetheless be 180 months.

### III.    *Conclusion*

For the reasons set forth above, the Court will grant Saulsbury's motion for a reduced sentence to the extent described above.

DATED this 13th day of August, 2020.

BY THE COURT:

_____/s/_____
James K. Bredar
Chief Judge